290 P.3d 1208

**In re the Marriage of Margaret K. RINEGAR, Petitioner/Appellant,**

v.

**Michael J. RINEGAR, Respondent/Appellee.**

**No. 1 CA–CV 11–0361.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 1, 2012.

The Murray Law Offices, P.C. By Stanley D. Murray, Scottsdale, Attorneys for Petitioner/Appellant.

Law Office of Robert E. Siesco, Jr. By Robert E. Siesco, Jr. and Gallios & Boland PC By Aris J. Gallios, Phoenix, Attorneys for Respondent/Appellee.

## OPINION

SWANN, Judge.

¶ 1 The superior court reopened Margaret Rinegar ("Wife") and Michael Rinegar's ("Husband['s]") decree of dissolution to allocate omitted community retirement assets and awarded attorney's fees to Husband. We hold that the court properly exercised jurisdiction, and that a separate civil action was not required to allocate these assets. We reject Wife's argument that the assets had already been allocated by the decree's catch-all provision, because the court heard evidence concerning their division, and to infer their intentional exclusion from the decree would be to affirm an inequitable division of the community property. We further hold that Husband's delay in seeking relief did not waive his ability to enforce his rights in the omitted assets, and the court did not abuse its discretion by awarding attorney's fees to him. Accordingly, we affirm the superior court's orders.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Wife and Husband married in June 1979. Throughout the parties' marriage, Wife worked at Qwest and earned various retirement benefits, including a qualified pension plan, a non qualified pension plan, stock options, and a 401(K) savings and investment plan.

¶ 3 In April 2004, Wife filed a petition for legal separation, which was later converted into a petition for dissolution. In May 2005, the parties entered into an agreement dividing most of their real and personal property and their debts. The agreement specifically excluded the Qwest retirement assets.

¶ 4 The dissolution action proceeded to trial in September 2005. On the first day of trial, Husband's pension law expert testified that the qualified pension plan and the 401(K) plan could be divided with a qualified domestic relations order ("QDRO"), but the division of the non-qualified pension plan would require an order in the decree that Wife was to pay Husband his share when she received it from that plan. In November

2005, after two days of trial, Judge Heilman made partial findings of fact and conclusions of law. He determined, however, that the court needed more information regarding Wife's earnings to determine spousal maintenance, and he therefore ordered further evidentiary proceedings. The matter proceeded to a third day of trial in July 2006, before Judge Padilla. There, Husband offered evidence that Wife earned the Qwest stock options during the marriage. But neither party specifically asked the court to allocate either the stock options or the non-qualified pension plan.

¶ 5 Judge Padilla entered the decree of dissolution in August 2006. The decree included the following "catch-all" provision as part of the property division:

> [A]ll personal and community property acquired during the ... marriage has been equitably divided between the parties prior to today's date. The court further affirms the parties' "Simple Agreement" signed by [Husband and Wife] on May 17, 2005, as well as any Rule 80(d) and Rule 69 agreements previously found by the court and entered into by the parties. Accordingly, IT IS ORDERED awarding to Respondent/Husband as his sole and separate property ... all vehicles, household furniture, furnishings and appliances, and other real and personal property currently in his possession so long as such award and possession is consistent with the parties' agreements.
>
> IT IS FURTHER ORDERED awarding to Petitioner/Wife as her sole and separate property ... all vehicles, household furniture, furnishings and appliances, and other real and personal property currently in her possession so long as such award and possession is consistent with the parties' agreements.

The decree did not include any provision relating to any of the Qwest assets.

¶ 6 In December 2006, the court entered stipulated QDROs pertaining to the qualified pension plan and the 401(K) savings and investment plan, but nothing was done about the non-qualified pension plan or the stock options until January 2010, when Husband served a subpoena duces tecum on Qwest seeking information about those two accounts. Wife moved to quash the subpoena, arguing that the non-qualified pension plan and · the stock options were her separate property pursuant to the decree's catch-all provision. Husband responded that the plan and the stock options were community assets, and the subpoenaed information was needed to allocate them.

¶ 7 Before ruling on the subpoena issue, the court ordered an evidentiary hearing to determine whether the non-qualified pension plan and the stock options were covered by the decree's catch-all provision or were omitted property pursuant to A.R.S. § 25–318(D). Before the hearing, Husband filed a motion pursuant to ARFLP 85 to reopen the decree to allocate the plan and the stock options. Wife contested the motion and argued that Husband had failed to establish he was entitled to relief under ARFLP 85(C).

¶ 8 The court held the evidentiary hearing, granted Husband's motion to reopen the decree, concluded that the plan and the stock options were omitted property subject to equitable division, and awarded Husband one-half of the community interest in the plan and the stock options. Wife filed a motion for a new trial.[1] At oral argument on that motion, Wife argued for the first time that the court lacked jurisdiction to enter an order allocating the assets in the dissolution litigation because the issue should have been raised by a separate civil action pursuant to *Thomas v. Thomas,* 220 Ariz. 290, 205 P.3d 1137 (App.2009). The court denied Wife's motion for a new trial and awarded Husband $40,000 in attorney's fees.

¶ 9 Wife appeals. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(2) & (5)(a).

## DISCUSSION

### I. THE SUPERIOR COURT PROPERLY EXERCISED JURISDICTION.

¶ 10 On appeal, Wife does not reprise her argument that under *Thomas* the court

---

1. Though styled a "Motion to Amend Ruling," Wife's motion was based on ARFLP 83, which governs motions for new trial. We therefore view the motion as an appealable motion for a new trial.

lacked jurisdiction to enter an order allocating the non-qualified pension plan and the stock options in the dissolution litigation. She instead appears to concede that she waived that argument in the parties' joint pretrial statement. We conclude that the court properly exercised jurisdiction, but not because of any waiver.

¶ 11 In *Thomas*, the parties' stipulated dissolution decree failed to mention a condominium purchased during the marriage. 220 Ariz. at 291, ¶ 2, 205 P.3d at 1138. Several years later, the husband filed a motion in the dissolution action for an order to show cause and asked that he be awarded one-half of the equity in the condominium. *Id.* Because the parties did not dispute that the condominium was *intentionally* omitted from the stipulated decree, we concluded that it was separate property which the superior court lacked jurisdiction to allocate. *Id.* at 292–93, ¶¶ 10, 12, 205 P.3d at 1139–40. We explained that when former spouses hold an asset as tenants in common, "filing a separate action to resolve matters relating to the omitted property would be 'entirely consistent with the decree.' " *Id.* at 293–94, ¶ 14, 205 P.3d at 1140–41 (quoting *Dressler v. Morrison*, 212 Ariz. 279, 282, ¶ 16, 130 P.3d 978, 981 (2006)). We concluded that because the condominium was no longer "marital property," the court lacked statutory authority to allocate it under Title 25, and therefore lacked jurisdiction. *Id.* at 294, ¶ 16, 205 P.3d at 1141.

¶ 12 The notion that *Thomas* prevents courts from ever reopening dissolution actions to allocate omitted property is incorrect. In *Thomas*, the husband sought to reopen the dissolution action so that he could be awarded an interest in the condominium. But because it was undisputed that the parties intentionally omitted the condominium from the decree, the parties' interests in the condominium as tenants in common had already been conclusively resolved. *Thomas* does not stand for the proposition that a separate civil action is the exclusive method by which a party may request the allocation of omitted property. The allocation of omitted property may be accomplished either by

a separately filed civil action *or* by a motion to reopen the dissolution action—there is no jurisdictional impediment to a "family court" rather than a "civil court" considering the question.

¶ 13 Arizona's superior court is a "single unified trial court of general jurisdiction." Ariz. Const. art. VI, §§ 13, 14; *State v. Marks*, 186 Ariz. 139, 142, 920 P.2d 19, 22 (App.1996). The superior court may maintain separate departments for different kinds of cases, but such administrative organization does not partition the court's general subject matter jurisdiction. *Marks*, 186 Ariz. at 142, 920 P.2d at 22; *see also Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 100, 907 P.2d 67, 69 (1995). Here, the superior court properly exercised its jurisdiction to consider Husband's motion to reopen the decree, irrespective of Wife's statements in the joint pretrial statement.

## II. THE SUPERIOR COURT DID NOT ERR BY REOPENING THE DECREE AND ALLOCATING THE OMITTED ASSETS.

¶ 14 Wife contends that the court erred by reopening the decree and allocating the non-qualified pension plan and the stock options because the decree's catch-all provision had allocated those assets to Wife as her separate property, as "personal property in ... her possession." We review the court's interpretation of the decree de novo. *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10, 157 P.3d 482, 486 (App.2007).

### A. The Non-qualified Pension Plan and the Stock Options at Issue Were Not Included in the Decree's Catch-all Provision Because They Were Never Specifically Described.

¶ 15 A.R.S. § 25–318(F) provides that a judgment "shall specifically describe" the property affected. The non-qualified pension plan and the stock options were not part of the parties' original agreement. Nor were they specifically addressed in Judge Heilman's November 2005 order, the findings of fact, the decree, or the QDROs.[2] Wife con-

2. We reject Wife's contention that the November 2005 order constituted the final decision regard-

tends, however, that the November 2005 order's discussion of the income that Husband would receive from the qualified pension and 401(K) plans, and its omission of any discussion of the non-qualified pension plan and the stock options, showed that the court intended to allocate the latter assets to Wife as her separate property via the decree's catch-all provision. We disagree. The November 2005 order did not award any Qwest-related assets to either party, and we cannot discern how a discussion about whether to impute income from the qualified pension and the 401(K) plans to Husband satisfies § 25–318(F) as to the non-qualified pension plan and the stock options.

■ ¶ 16 We reject Wife's contention that A.R.S. § 25–318(F) does not apply. The assets at issue are complex and are not the type of property that can properly be disposed of in a catch-all provision. To that end, Wife's reliance on *In re Estate of Lamparella,* 210 Ariz. 246, 109 P.3d 959 (App. 2005), is misplaced. *Lamparella* involved a settlement agreement that provided that each of the divorcing parties would retain the personal property in his or her possession but did not specifically describe any particular property. *Id.* at 251, ¶ 24, 109 P.3d at 964. *Lamparella* held that this catch-all provision included the annuity the wife claimed the parties forgot to include in the more detailed property allocation provisions, and therefore held that the annuity was not omitted property under § 25–318. *Id.* at ¶ 28.

¶ 17 *Lamparella* is distinguishable. The parties in *Lamparella* merely filled in blanks on a prepared property settlement agreement form, and the matter proceeded by default. *Id.* at 247–48, ¶¶ 4, 6, 109 P.3d at 960–61. The superior court in *Lamparella* heard no evidence regarding the personal property involved. Here, by contrast, the parties' agreement specifically excluded the Qwest assets. Further, the court heard testimony from two witnesses regarding the allocation of those assets. Unlike in *Lamparella,* the parties here did not simply forget to include an asset in a list of property. Because of the disjointed nature of the trial

proceedings and the fact that two different judges addressed these complex financial matters several months apart, we conclude that the decree mistakenly omitted the assets entirely and the catch-all provision did not apply to them.

B. *Wife's Interpretation of the Decree's Failure To Describe the Non-qualified Pension Plan and the Stock Options Would Result in an Inequitable Division.*

¶ 18 Wife contends that her interpretation of the decree's catch-all provision results in a fair and equitable distribution of the community property. The court's failure to divide the community's interest in the non-qualified pension and stock options should be viewed as an equalization of the equity in the marital home that was awarded to Husband.

■ ¶ 19 We reject Wife's contention. The court expressly considered the unequal distribution concerning the marital home in equalizing the amount of spousal maintenance, yet it did not mention the non-qualified pension plan and the stock options as part of its equalization calculus. Further, it is undisputed that the community had an interest in those assets, and the parties produced evidence concerning their value. The court also made detailed findings concerning the allocation and offsets for other assets. We conclude that if the court had intended its failure to divide the community's interest in the non-qualified pension plan and the stock options to serve as an additional offset to the marital home award, it would have said so.

C. *Husband Did Not Waive His Right To Enforce His Property Rights in the Non-qualified Pension Plan and the Stock Options.*

■ ¶ 20 Wife finally contends that the court erred by granting Husband's motion to reopen the decree because Husband failed to explain his delay in seeking to enforce his property rights in the non-qualified pension plan and the stock options.[3] We review the

---

ing property issues. That order did not contain property awards.

3. Husband contends that Wife failed to raise this argument in the trial court. We disagree. Wife

court's decision to reopen the decree for an abuse of discretion. *See LaPrade v. LaPrade*, 189 Ariz. 243, 247, 941 P.2d 1268, 1272 (1997). And we "will view the evidence in the light most favorable to supporting the decision below." *Johnson v. Johnson*, 131 Ariz. 38, 44, 638 P.2d 705, 711 (1981) (citation omitted). Because neither party requested written findings of fact or conclusions of law, we presume that the superior court found every fact necessary to support its ruling. *See Able Distrib. Co., Inc. v. James Lampe, Gen. Contractor*, 160 Ariz. 399, 402, 773 P.2d 504, 507 (App.1989).

¶ 21 Denying relief to Husband would have resulted in a substantially unequal distribution of what was undeniably community property. This inequality would not have been justified by anything in the record. As for the reasonableness of Husband's delay in seeking relief, we note that the delay was not prejudicial, because Wife was not immediately eligible to withdraw retirement funds without any reduction. The superior court did not abuse its discretion by declining to find waiver and reopening the decree to remedy the injustice that would otherwise result. *See Gorman v. City of Phoenix*, 152 Ariz. 179, 182, 731 P.2d 74, 77 (1987) (a party "must show 'extraordinary circumstances of hardship or injustice' ... in addition to those circumstances set out in clauses [85(C)(1)(a)-(e) ]" to obtain relief from a judgment); *Birt v. Birt*, 208 Ariz. 546, 550–51, ¶¶ 25–26, 96 P.3d 544, 552–53 (App.2004) (husband's declaration of bankruptcy effectively destroyed the court's equitable distribution of community debts and was a proper basis to grant relief under A.R.S. § 25–327(A) and Ariz. R. Civ. P. 60(c) (equivalent to ARFLP 85(C))).

III.  **THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY AWARDING ATTORNEY'S FEES TO HUSBAND.**

■ ¶ 22 Wife contends that the superior court awarded fees to Husband based on an erroneous finding that she was acting unreasonably. We review an award of attorney's fees under A.R.S. § 25–324 for an abuse of discretion. *Cohen*, 215 Ariz. at 68, ¶ 18, 157 P.3d at 488.

¶ 23 Here, the court discussed Wife's refusal to tell Husband the value of the disputed assets. But that was not the only basis for the fee award. The court stated that the fee award was based, in part, on the financial disparity between the parties. That finding was supported by the evidence, which showed a significant financial disparity between the parties and also showed that Wife's annual salary has consistently been more than double Husband's annual income. The court's decision to award Husband a portion of his attorney's fees was not an abuse of discretion. *See Magee v. Magee*, 206 Ariz. 589, 592, ¶ 13, 81 P.3d 1048, 1051 (App.2004) (holding that fees may be awarded based on an income disparity regardless of poorer spouse's ability to pay); *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 29, 5 P.3d 911, 917 (App.2000) (holding that a disparity in income supports a fee award even if the paying spouse did not act unreasonably).

## CONCLUSION

¶ 24 For the reasons set forth above, we affirm the superior court's order reopening the decree to award Husband one-half of the community interest in the non-qualified pension plan and the stock options. We also affirm the court's order denying Wife's motion for a new trial, and we affirm the court's award of attorney's fees to Husband.

■ ¶ 25 Both parties request an award of attorney's fees on appeal pursuant to A.R.S. § 25–324. Wife asserts that she lacks financial resources as compared to Husband. But the most recent financial affidavits show that Wife earns more than twice what Hus-

argued in the superior court that Husband's motion to reopen failed to address the "reasonable time" and extraordinary circumstances requirements of ARFLP 85. Husband also contends that Wife waived the argument on appeal because her opening brief failed to cite the record or substantive legal authority. Although Wife's

argument in her opening brief is not well-developed, she does cite one case, *De Gryse v. De Gryse*, 135 Ariz. 335, 338, 661 P.2d 185, 188 (1983), in support of her argument that the court must find "the existence of conditions that justify the reopening of a judgment under the laws of this state." We therefore find no waiver.

band receives in spousal maintenance and disability benefits. Additionally, Wife has continued to work and contribute to her retirement benefits after the divorce, whereas Husband's retirement benefits are limited to his share of the community's interest. We conclude that there remains a significant financial disparity that favors Wife. Accordingly, we award Husband a reasonable amount of his attorney's fees and costs on appeal upon his compliance with ARCAP 21.

CONCURRING: JOHN C. GEMMILL, Presiding Judge and ANDREW W. GOULD, Judge.